Ethan Preston (263295)
PRESTON LAW OFFICES, LLC
1658 North Milwaukee Avenue, No. 253
(312) 492-4070 (phone)
(312) 262-1007 (facsimile)
ep@eplaw.us

David C. Parisi, Esq. (162248)
Suzanne Havens Beckman, Esq. (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiff Harold Holmes, on behalf
of himself, and all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| HAROLD HOLMES, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLLECTION BUREAU OF AMERICA, LTD., a California corporation, and BAY AREA CREDIT SERVICE, LLC, a California limited liability company,  and DOES 1-100, inclusive,<br><br>Defendants. | No. C 09-2540 WHA<br><br>Judge William H. Alsup<br><br>**NOTICE OF MOTION; MOTION FOR PRELIMINARY INJUNCTION; NOTICE OF LODGING PROPOSED ORDER**<br><br>**Date:     August 13, 2007**<br>**Time:     8:00 am**<br>**Location:  Courtroom 9, 19th Floor**<br>**           450 Golden Gate Ave.**<br>**           San Francisco, CA 94102** |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Harold Holmes ("Holmes") will move the Court for a preliminary injunction in the above referenced proceedings on August 13, 2009, at 8:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at Courtroom 9, 19th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable William H. Alsup. Plaintiff's requested relief is set forth below.

**MOTION FOR PRELIMINARY INJUNCTION**

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declaration, oral argument of counsel, and any other matter that may be submitted at the hearing.

Defendants Collection Bureau of America, Ltd. ("CBA") and Bay Area Credit Services, LLC ("BACS") are debt collectors attempting to collect certain purported debts from Holmes. Holmes has consistently disputed these purported debts: he has disputed them in writing with the original creditor, and he since disputed them with predecessor debt collectors. Finally, Holmes has directly disputed the debts, in writing, with Defendants. However, Defendants have reported these debts to the national credit reporting agencies ("CRAs") without reporting that Holmes has consistently disputed these purported debts.

This conduct violates the federal Fair Debt Collection Practices Act ("FDCPA") and California's Consumer Credit Reporting Agencies Act ("CCRAA"). The FDCPA prohibits debt collectors like Defendants from "[c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (2009). The CCRAA prohibits Defendants from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency [when they] know[] or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a) (2009).

Both California's unfair competition law ("UCL") and the CCRAA provide Holmes with injunctive remedies against these violations. *See* Cal. Bus. & Prof. Code § 17203; Cal.

Civ. Code § 1785.31(b) (2009). Injunctive relief is particularly appropriate here, as Defendants' conduct injures Holmes's reputation and creditworthiness. Holmes's injury is irreparable, as his damage is difficult or impossible to calculate. Conversely, the injunctive relief sought herein will impose a very modest burden on Defendants, and will benefit the public interest.

WHEREFORE, it is respectfully requested that this Court enter an order

a)  Enjoining Defendants Collection Bureau of America, Ltd. and Bay Area Credit Services, LLC, or their officers, agents, servants, employees, attorneys, or other persons who are in active concert or participation with any of the foregoing from:

1.  reporting any purported debt which debt has been disputed, in writing, by the person who purportedly owes the debt ("Disputed Debt") to a credit reporting agency (specifically including, but without limitation, TransUnion, Equifax, or Experian) unless Defendants also report the fact that such Disputed Debt has been disputed; and

2.  selling, assigning, or transferring any Disputed Debt without disclosing to any person who receives any Disputed Debt or to any person who attempts to purchase any Disputed Debt that the Disputed Debt has been disputed, or to cause the debt not be to reported at all.

b)  For each Disputed Debt that Defendants have reported to a credit reporting agency, but which Disputed Debts have not been reported to the credit reporting agency as disputed, requiring Defendants to report the Disputed Debt as disputed in the Defendant's next reporting cycle and in any event no later than 60 days from the date of the Court's order;

c)  Setting a bond for the injunction for $1,000 under Federal Rule of Civil Procedure 65(c).

**NOTICE OF LODGING PROPOSED ORDER**

Pursuant to General Order No. 45(VIII), Movant lodged with the Court the order below by emailing a Microsoft Word version of the order below to "WHApo@cand.uscourts.gov." *See* U.S. District Court for the Northern District of California, *How do I...? / Where do I...?, at* https://ecf.cand.uscourts.gov/cand/faq/how_do_i/how_do_i.htm (last updated Jun. 18, 2009).

Dated: July 8, 2009

1

2     By:  s/Ethan Preston

3            Ethan Preston (263295)
             PRESTON LAW OFFICES, LLC
             1658 North Milwaukee Avenue, No. 253
4            (312) 492-4070 (phone)
             (312) 262-1007 (facsimile)
5            ep@eplaw.us

6            David C. Parisi, Esq. (162248)
             Suzanne Havens Beckman, Esq. (188814)
             PARISI & HAVENS LLP
7            15233 Valleyheart Drive
             Sherman Oaks, California 91403
8            (818) 990-1299 (phone)
             (818) 501-7852 (facsimile)
9            dcparisi@parisihavens.com
             shavens@parisihavens.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Ethan Preston (263295)
   PRESTON LAW OFFICES, LLC
2  1658 North Milwaukee Avenue, No. 253
   (312) 492-4070 (phone)
3  (312) 262-1007 (facsimile)
   ep@eplaw.us
4
   David C. Parisi, Esq. (162248)
5  Suzanne Havens Beckman, Esq. (188814)
   PARISI & HAVENS LLP
6  15233 Valleyheart Drive
   Sherman Oaks, California 91403
7  (818) 990-1299 (phone)
   (818) 501-7852 (facsimile)
8  dcparisi@parisihavens.com
   shavens@parisihavens.com
9
   *Attorneys for Plaintiff Harold Holmes, on behalf*
10 *of himself, and all others similarly situated*

11
                 **IN THE UNITED STATES DISTRICT COURT**
12           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
13

14 | HAROLD HOLMES, an individual, on his own behalf and on behalf of all others similarly situated, | No. C 09-2540 WHA |
|---|---|
|  | Judge William H. Alsup |

15

16

17                    Plaintiff,

       v.

18 COLLECTION BUREAU OF AMERICA,
   LTD., a California corporation, and BAY
19 AREA CREDIT SERVICE, LLC, a California
   limited liability company,  and DOES 1-100,
20 inclusive,

                       Defendants.
21

22

| Plaintiff section | Defendant section |
|---|---|
| HAROLD HOLMES, an individual, on his own behalf and on behalf of all others similarly situated, | No. C 09-2540 WHA |
| Plaintiff, | Judge William H. Alsup |
| v. | **HARORLD HOLMES'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION** |
| COLLECTION BUREAU OF AMERICA, LTD., a California corporation, and BAY AREA CREDIT SERVICE, LLC, a California limited liability company, and DOES 1-100, inclusive, | **Date:** **August 13, 2009** **Time:** **8:00 am** **Location:** **Courtroom 9, 19th Floor** **450 Golden Gate Ave.** **San Francisco, CA 94102** |
| Defendants. | |

23

24

25

26

27

28

Holmes's Memorandum of Points and Authorities                                    No. C 09-2540 WHA
for His Motion

1

## Table of Contents

2

Page

**I.     Defendants Violated the FDCPA and CCRAA** …....................................................1

3

4           A.     CBA Failed to Report That Holmes Had Disputed a Purported Debt…...............1

5           B.     BACS Failed to Report That Holmes Had Disputed a Purported Debt ….............2

6           C.     Defendants' Conduct Clearly Violated the FDCPA and CCRAA …....................3

7

**II.     Given the Evidence, Holmes Is Entitled to the Proposed Preliminary Injunction** ..4

8

9           A.     The Proposed Injunction Is Authorized Under California Law …........................4

10          B.     Incomplete, Inaccurate Credit Reports Constitute Irreparable Harm…...............6

11          C.     Holmes Does Not Have An Adequate Legal Remedy …......................................7

12          D.     Because the Proposed Injunction is Narrowly Drawn, the Balance of Harms and
                   the Public Interest Favor Granting the Injunction …..........................................11

13          E.     The Court Should Require No Bond or a Minimal Bond …..............................12

14

15   **III.     Conclusion**…......................................................................................................13

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Federal Cases**                                                                                      **Page**

*A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)…..................................10

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)…...................................................13

*United States v. Bluitt*, 815 F. Supp. 1314 (N.D. Cal. 1992)…..............................................8

*Burdick v. Palisades Collection LLC*,
    No. 07-1057, 2008 WL 80943 (C.D. Cal. Jan. 3, 2008) …...................................5

*Chalk v. United States Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988)…......10 n.5

*Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004)…......................6 n.1

*Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008)…........................................................7

*eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) …...........................11-12

*Facebook, Inc. v. Wallace*, No. 09-00798, 2009 WL 840391 (N.D. Cal. Mar. 24, 2009) …7 n.2

*FTC v. H. N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982)…....................................................4

*Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021 (N.D. Cal. 2000) …...............10 n.5

*Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739 (9th Cir. 2001)…...............1

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991) …....................................................9

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*,
    938 F. Supp. 612 (C.D. Cal. 1996)…...............................................................10 n.6

*United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) …............................................6 n.1

*Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Cal. 2000) …...................................................5

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) …......................................................12

*Justin v. City of Los Angeles*,
    No. 00-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000) …..............................12, 13

*Kaiser Trading Co. v. Associated Metals & Minerals Corp.*,
    321 F. Supp. 923 (C.D. Cal. 1970)…..............................................................4-5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) …..............................................................6

*Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823 (C.D. Cal. 1998)…...................9

*MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007)…...........................7 n.2, 9

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782 (9th Cir. 2005) …...........1

*Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865 (9th Cir. 2008) …................10

1

**Table of Authorities**

2

**Federal Cases**                                                                                                    **Page**

3

*Perez v. Telecheck Services, Inc.*, 208 F. Supp. 2d 1153 (D. Nev. 2002)…...............................3

4

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) …............11

5

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) …..............................................................................7, 9

6

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005) …...........................4, 11, 12

7

*Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643 (9th Cir. 1988)…...............................................4

8

*Stanley v. Univ. S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) …..........................................................7

9

*Sullivan v. Equifax, Inc.*, No. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002)…..............3

10

*United States v. Tarantino*, No. 06-0618, 2007 WL 1521031 (E.D. Cal. May 24, 2007) …........7

11

*Univ. of Hawaii Prof'l Assembly v. Cayetano*, 16 F. Supp. 2d 1242 (D. Haw. 1998)…..............7

12

*Walker v. Pierce*, 665 F. Supp. 831 (N.D. Cal. 1987) …...........................................................12

13

**Federal Statutes**                                                                                               **Page**

14

15 U.S.C. § 1681c (2009) …...................................................................................................2, 3

15

15 U.S.C. § 1681s–2 (2009)…....................................................................................................3

16

15 U.S.C. § 1692e (2009) ….......................................................................................................3

17

15 U.S.C. § 1692k (2009) ….......................................................................................................8

18

**Federal Rules**                                                                                                    **Page**

19

Fed. R. Civ. P. 65 …..................................................................................................................12

20

**California Cases**                                                                                               **Page**

21

*Anderson v. Souza*, 38 Cal.2d 825, 243 P.2d 497 (1952) …....................................................6, 9

22

*Brown Derby Hollywood Corp. v. Hatton*, 61 Cal.2d 855, 395 P.2d 896 (1964) …..................10

23

*Brownfield v. Daniel Freeman Marina Hosp.*,
    208 Cal. App. 3d 405, 256 Cal. Rptr. 240 (Cal. Ct. App. 1989) …...............................6

24

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
    4 Cal. App. 4th 963, 6 Cal. Rptr. 2d 193 (Cal. Ct. App. 1992)…..................................6

25

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 999 P.2d 706 (2000) …......12 n.7

26

*Jay Bharat Developers, Inc. v. Minidis*,
    167 Cal. App. 4th 437, 84 Cal. Rptr. 3d 267 (Cal. Ct. App. 2008)…......................10 n.6

27

28

1

**Table of Authorities**

2

**California Cases**                                                          **Page**

3  *Hicks v. Clayton*, 67 Cal. App. 3d 251, 136 Cal. Rptr. 512 (Cal. Ct. App. 1997) ….............8 n.3

4  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 58 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ….9

5  *Keeler v. Haky*, 160 Cal. App. 2d 471, 325 P.2d 648 (Cal. Ct. App. 1958) ….........................8

6  *Olson v. Six Rivers Nat. Bank*,
          111 Cal. App. 4th 1, 3 Cal. Rptr. 3d 301 (Cal. Ct. App. 2003) ….................................3-4

7

8  *Union Oil Co. of Cal. v. Greka Energy Corp.*,
          165 Cal. App. 4th 129, 80 Cal. Rptr. 3d 738 (Cal. Ct. App. 2008)…............................8

9  *Walnut Creek Manor v. Fair Employment & Housing Comm'n*,
          54 Cal.3d 245, 814 P.2d 704 (1991)…....................................................................9 n.4

10

11  *Wind v. Herbert*, 186 Cal. App. 2d 276, 8 Cal. Rptr. 817 (Cal. Ct. App. 1960)…...............8 n.3

**California Statutes**                                                       **Page**

12

13  Cal. Bus. & Prof. Code § 17203 (2009) ….....................................................................1

Cal. Civ. Code § 1785.1 (2009)  ….................................................................................7

14

Cal. Civ. Code § 1785.25 (2009) ….................................................................................3

15

Cal. Civ. Code § 1785.31 (2009) ….................................................................1, 8, 9 n.4

16

Cal. Code Civ. Proc. § 526 (2009) ….............................................................................9

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Harold Holmes's ("Holmes") complaint arises from Defendants Collection Bureau of America, Ltd. ("CBA") and Bay Area Credit Services, LLC ("BACS") practice of reporting purported debts which have been disputed to the national credit reporting agencies ("CRAs") without reporting that the debts have been disputed. This practice violates the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692-1692p) and California's Consumer Credit Reporting Agencies Act ("CCRAA") (Cal. Civ. Code §§ 1785.1-1785.44). The CCRAA specifically authorizes injunctive remedies as well as damages claims, and the California unfair competition law ("UCL") provides injunctive remedies for the violation of the FDCPA. *See* Cal. Civ. Code § 1785.31(b); Cal. Bus. & Prof. Code § 17203 (2009). Injunctive relief is warranted because Defendants' practices plainly violate the FDCPA and the CCRAA and inflict an intangible injury on Holmes's reputation. Finally, it is essentially costless for Defendants to comply with the law, and this compliance will benefit the public interest.

**I.    Defendants Violated the FDCPA and CCRAA**

Holmes presents the basic evidence necessary to demonstrate Defendants' violations of the FDCPA and CCRAA in his Complaint: the facts are not complicated. The initial ruling on a motion for preliminary injunction is reviewed for abuse of discretion. *Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 743 (9th Cir. 2001). "A district court abuses its discretion if it bases its ruling . . . on a clearly erroneous assessment of the evidence." *Id.* A finding of fact is "clearly erroneous" where "the record contains no evidence to support it[.]" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) (citing *Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir.1995)). Hence, if a movant presents evidence that, on its face, merits a preliminary injunction, the injunction should not be denied unless the opposing party presents some contradicting evidence.

**A.    CBA Failed to Report That Holmes Had Disputed a Purported Debt**

CBA sent Holmes a collection letter, dated May 8, 2008, which uses two different account numbers to reference the same purported debt. (Holmes Decl. ¶ 2.) The letter states

1  lists the creditor as "AT&T – California" and "8585656513468" as the account number. (*See*
2  *id.*) The letter also urges Holmes to

3        *** Make your payments online @ www.PAYCBA.com **Please use account**
4        **#1150994** ***

5  (*See id.*) (emphasis supplied). Plainly, CBA used the account number 1150994 as an internal
6  reference to the purported debt under the AT&T account number 8585656513468: the two
7  account numbers reference the same purported debt. On June 9, 2008, Holmes sent a dispute
8  letter to CBA. Holmes's letter references "Account # 8585656513468" and further states that
9  "[t]his is to inform you that this matter is in dispute and has been in dispute since July 2007.
10 All undisputed charges from AT&T have been paid in full." (*Id.* ¶ 3.)

11       On November 25, 2008, Holmes obtained a summary of his credit report from
12 Experian. (*Id.* ¶ 4.) The summary indicated that CBA had reported a debt under account
13 number 1150994 to Experian in July 2008. (*Id.*) The Experian summary does not contain any
14 indication that Holmes had disputed account number 1150994 with CBA on June 9, 2008.
15 (*Id.*) Under 15 U.S.C. § 1681c(f), Experian's summary had to indicate that Holmes had
16 disputed that debt if CBA disclosed the dispute to Experian. The evidence shows that, even
17 after Holmes disputed the purported debt, CBA still reported it to Experian without also
18 disclosing that Holmes had disputed it.

19       **B.     BACS Failed to Report That Holmes Had Disputed a Purported Debt**

20       BACS sent a collection letter to Holmes dated November 5, 2008. The letter listed
21 "AT&T West" as the creditor and 79653230 as the account number. (*Id.* ¶ 5.) On November
22 25, 2008, Holmes sent BACS a dispute letter. Holmes's letter references "Account #
23 79653230" and further states that "[t]his is to inform you that this matter is in dispute and has
24 been in dispute since July 2007. All undisputed charges from AT&T have been paid in full."
25 (*Id.* ¶ 6.)

26       Holmes obtained a credit report from TransUnion dated February 2, 2009. (*Id.* ¶ 7.)
27 The credit report indicates that BACS reported a debt under account number 79653230. The
28 credit report does not contain any indication that Holmes had disputed account number

79653230 with BACS. Under 15 U.S.C. § 1681c(f), TransUnion's credit report had to indicate that Holmes had disputed that debt if BACS disclosed the dispute to TransUnion. The evidence shows that, even after Holmes disputed the purported debt, BACS still reported it to TransUnion without also disclosing that Holmes had disputed it.

**C.    Defendants' Conduct Clearly Violated the FDCPA and CCRAA**

The FDCPA broadly prohibits debt collectors from from "[c]ommunicating . . . *to any person* credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (2009). Section 1692e has been consistently construed to prohibit a debt collector from communicating about a disputed debt (whether to a credit reporting agency or otherwise), unless the debt collector discloses that the debt has been disputed. *Cf.*, *e.g.*, *Perez v. Telecheck Services, Inc.*, 208 F. Supp. 2d 1153, 1156 (D. Nev. 2002) (failure to communicate that disputed debt was disputed violates 15 U.S.C. § 1692e(8)); *Sullivan v. Equifax, Inc.*, No. 01-4336, 2002 WL 799856, at *5 (E.D. Pa. Apr. 19, 2002) (debt collector reporting disputed debt to CRAs and "failed to mark the debt as disputed" could be liable under 15 U.S.C. § 1692e(8)).

Likewise, the CCRAA prohibits Defendants from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency [when they] know[] or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a) (2009). The phrase "incomplete or inaccurate" and the constructive knowledge element in subsection 1785.25(a) should be construed in light of the overarching federal legislation. The Fair Credit Reporting Act ("FCRA") (15 U.S.C. §§ 1681-1681x) prohibits reporting debts that have been disputed to CRAs, without disclosing that the debts have been disputed:

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s–2(a)(3) (2009). The CCRAA "is substantially based on the Federal Fair Credit Reporting Act," and "the federal provisions [are] persuasive authority and entitled to

substantial weight when interpreting the California provisions." *Olson v. Six Rivers Nat. Bank*, 111 Cal. App. 4th 1, 12, 3 Cal. Rptr. 3d 301, 309 (Cal. Ct. App. 2003). The FRCA prohibits Defendants from reporting disputed debts without disclosing that the debts are disputed. It follows that the CCRAA's prohibition against reporting "incomplete" information should be construed to prohibit reporting disputed debts without disclosing that the debts are disputed.

## II.    Given the Evidence, Holmes Is Entitled to the Proposed Preliminary Injunction

The Ninth Circuit has provided two tests for preliminary injunctive relief under Federal Rule 65. The traditional criteria are 1) likelihood of success on the merits, 2) risk of irreparable injury without a preliminary injunction, 3) a balance of hardships favoring the movant, and 4) advancement of the public interest. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Alternatively, the movant may demonstrate "*either* a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*. (emphasis in original, citations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id*. The evidence Holmes presents establishes a strong likelihood he will prevail on his claims. As examined below, both the balance of interim harm and the public interest support the proposed preliminary injunction.

### A.    The Proposed Injunction Is Authorized Under California Law

California law controls the availability of the injunctive relief Holmes seeks. *See, e.g., Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988). "Rule 65 concerns the procedure for issuing a preliminary injunction. The substantive basis and the jurisdictional authority for use of this procedure must be sought elsewhere." *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982). Thus, the Court should "look to [California] law to determine if a preliminary injunction is permissible," and then "look to federal law to determine whether the court should exercise its discretion" to issue the injunction. *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F. Supp. 923, 931 n.14 (C.D. Cal.

1970).

California law permits the injunctive relief sought by Holmes, and both California and federal precedent support the exercise of discretion to grant the injunction. The proposed injunction restrains Defendants from prospective violations of the FDCPA and CCRAA by prohibiting them from reporting disputed debts to the CRAs without disclosing that the debts have been disputed. The CCRAA directly authorizes this injunctive relief. "Injunctive relief shall be available to any consumer aggrieved by a violation or a threatened violation of [the CCRAA] whether or not the consumer seeks any other remedy under this section." Cal. Civ. Code § 1785.31(b) (2009). The FDCPA does not authorize injunctive relief on its own terms, but "FDCPA violations also trigger the [UCL], which adds injunctive relief to [an FDCPA plaintiff's] remedies . . ." *Irwin v. Mascott*, 112 F. Supp. 2d 937, 963 (N.D. Cal. 2000) (entering preliminary injunction against FDCPA violations).

> The injunctive relief offered by [the UCL] protects the consumer by stopping the abusive debt collector in its tracks. Prohibiting illegal activity is probably one of the most effective means of protecting consumers. This is exactly the type of greater protection afforded to consumers which is not preempted by the FDCPA. For this reason, Plaintiffs are entitled to all the remedies of the FDCPA, as well as the remedies offered by the [the UCL].

*Id*. Second, the injunction prohibits Defendants from selling, assigning, or transferring disputed debts without disclosing that the debts have been disputed to prospective purchasers. Subsection 1692e(8) prohibits this precise conduct.

> A defendant with actual notice that a debt is disputed violates § 1692e(8) by communicating with *any* third party about the debt without disclosing the disputed nature of the debt. [A plaintiff states a claim under subsection 1692e(8)] by alleging that [a debt collector] had notice that [the plaintiff] disputed the debt and yet failed to disclose that the debt was disputed when it assigned the account to other debt collectors and sold the debt.

*Burdick v. Palisades Collection LLC*, No. 07-1057, 2008 WL 80943, at *2 (C.D. Cal. Jan. 3, 2008) (emphasis in original). Again, the UCL authorizes an injunctive remedy for any violation of subsection 1692e(8). *Irwin*, 112 F. Supp. 2d at 963. Third, the injunction requires Defendants to disclose to credit reporting agencies that disputed debt are disputed in their next reporting cycle and no later than 60 days within the Court's order. The CCRAA and the FDCPA do not, on their own terms, mandate corrective measures for violations. However, the

scope of the Court's authority to grant equitable relief

> necessarily includes the authority to make orders to prevent such activities from occurring in the future. While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the consequences of past conduct. . . . An order which commands a party only to go and sin no more simply allows every violator a free bite at the apple.

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 973, 6 Cal. Rptr. 2d 193, 198 (Cal. Ct. App. 1992) (ordering corrective advertising) (punctuation, citations omitted).[1] A complete and effective remedy for Holmes's claims requires that Defendants not only abstain from future violations of the CCRAA, it requires that Defendants *correct* past failures to truthfully disclose that disputed debts have been disputed. Similarly, even if the Defendants have not sold disputed debts, the injunctive relief is necessary for a complete and effective remedy. Holmes has already disputed these same purported debts with a series of other debt collectors. (Holmes Decl. ¶ 9.) It does Holmes little good to obtain an injunction that the Defendants can readily neuter by simply selling the purported debts to third parties, thereby forcing Holmes to start his dispute all over again with a different set of debt collectors.

## B.   Incomplete, Inaccurate Credit Reports Constitute Irreparable Harm

Irreparable harm "does not readily lend itself to definition." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("*MGM*"). Irreparable harm is "that species of damages whether great or small, that ought not to be submitted to on the one hand or inflicted on the other." *Anderson v. Souza*, 38 Cal.2d 825, 834, 243 P.2d 497, 503 (1952) (punctuation, citations omitted). Injuries are irreparable if money damages alone are not adequate compensation. *See Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410, 256 Cal. Rptr. 240, 243 (Cal. Ct. App. 1989); *MGM*, 518 F. Supp. 2d at 1210.

---

[1]   "[F]ederal courts have the equitable power to enjoin otherwise lawful activity if they have jurisdiction over the general subject matter and if the injunction is necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct . . ." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985). *See also Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 937-38 (9th Cir. 2004) (upholding injunction that prohibited company which hacked into plaintiff's publicly-available website from accessing that website at all).

1

2          Defendants' conduct has harmed Holmes's reputational interest in the accuracy and

3   completeness of his credit report. It appears that Defendants reporting of these purported debts

4   caused Bank of America to reduce the credit line on his credit card, and caused SallieMae to

5   deny Holmes an educational loan. (Holmes Decl. ¶ 8.) The Ninth Circuit recognizes that

6   "intangible injuries . . . qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television*

7   *and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Regents of Univ. of Cal.*

8   *v. Am. Broadcasting Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)). In particular, "prospective

9   loss of reputation" constitutes irreparable harm. *Stanley v. Univ. S. Cal.*, 13 F.3d 1313, 1324

10  n.5 (9th Cir. 1994).[2] The CCRAA protects Holmes's interest in having an accurate and

11  complete credit report, and explicitly recognizes the impact credit reports have on consumers'

12  overall reputations:

13              [the credit reporting system is] [a]n elaborate mechanism [for] evaluating the
                credit worthiness, credit standing, credit capacity, and ***general reputation of***
                ***consumers*** [and] the purpose of [the CCRAA is] to [mandate] reasonable
14              procedures for meeting the needs of commerce for consumer credit . . . in a
                manner which is fair and equitable to the consumer, with regard to the . . .
15              accuracy . . . of such information . . .

16  Cal. Civ. Code § 1785.1(a), (d) (2009) (emphasis added). *See also Dennis v. BEH-1, LLC*, 520

17  F.3d 1066, 1071 (9th Cir. 2008) (credit reporting agencies "traffic[] in the reputations of

18  ordinary people"). Other courts in this Circuit have expressly recognized that inaccurate and

19  incomplete credit reports can constitute irreparable harm. *See*, *e.g.*, *United States v. Tarantino*,

20  No. 06-0618, 2007 WL 1521031, at *4 (E.D. Cal. May 24, 2007); *Univ. of Hawaii Prof'l*

21  *Assembly v. Cayetano*, 16 F. Supp. 2d 1242, 1247 (D. Haw. 1998) ("irreparable harm [was]

22  possible because . . . a delay of even five days could effect a person's credit report"). Money

23  alone cannot undo the loss of reputation Holmes has suffered by having Defendants'

24  incomplete and inaccurate credit information on his credit report.

25          **C.     Holmes Does Not Have An Adequate Legal Remedy**

26          The fact that Holmes has damages remedies under the CCRAA and the FDCPA does

27  _____

28  [2]  *See also Facebook, Inc. v. Wallace*, No. 09-00798, 2009 WL 840391, at *2 (N.D. Cal. Mar.
    24, 2009) ("possibility of irreparable injury exists with respect to [plaintiff's] reputation");
    *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("[h]arm to . . .
    reputation is unquantifiable and considered irreparable").

1    not mean that these remedies are **adequate**. *Cf.* Cal. Civ. Code § 1785.31(a) (2009); 15 U.S.C.

2    § 1692k(a) (2009). "[T]he 'mere existence' of [a remedy for damages] is not sufficient to

3    warrant denial of equitable relief: 'In order to preclude the granting of relief by the equity

4    court, an available remedy at law must be plain, clear and certain, prompt or speedy,

5    sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and

6    final.'" *United States v. Bluitt*, 815 F. Supp. 1314, 1317-18 (N.D. Cal. 1992) (quoting

7    *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991), punctuation

8    omitted).[3] Holmes's damages remedies are not practical, complete, or effective, and are

9    therefore inadequate.

10            Here, damages are not a practical or efficient remedy against the possibility of future

11   repetitive violations of the CCRAA and FDCPA. This is especially true if the purported debts

12   are sold or assigned by Defendants to new debt collectors. Even if he recovered damages,

13   Holmes would then be forced to begin disputing the purported debts all over again. Equitable

14   remedies are "preferred over the inadequate remedy of repetitive future damage actions."

15   *Union Oil Co. of Cal. v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 136, 80 Cal. Rptr. 3d

16   738, 742 (Cal. Ct. App. 2008). Where a trespass is recurring but causes insignificant damage,

17   "the remedy of successive actions at law for such damages is inadequate, and equity will

18   interpose by injunction." *Keeler v. Haky*, 160 Cal. App. 2d 471, 480, 325 P.2d 648, 653 (Cal.

19   Ct. App. 1958) (following *Mendelson v. McCabe*, 144 Cal. 230, 232-33, 77 P. 915, 916

20   (1904) ). Holmes has spent an estimated 80 hours disputing the purported debts at the center

21   of this case – writing letters, requesting and reviewing his credit report, and other tasks.

22   (Holmes Decl. ¶ 9.) Courts have recognized that a plaintiff's efforts in "detecting,

23   _____

24   [3]    California law is in accord. Irreparable injury "does not concern itself entirely with injury
        beyond the possibility of repair or beyond possible compensation in damages." *Wind v.*
25   *Herbert*, 186 Cal. App. 2d 276, 285, 8 Cal. Rptr. 817, 822 (Cal. Ct. App. 1960)
        (punctuation, citation omitted). A remedy at law is only adequate if it is
26                    speedy, adequate, and efficacious to the end in view[,] reach[es] the whole
                    mischief and secure[s] the whole right of the party in a perfect manner at the
27                    present time and not in the future. Otherwise, equity will interfere and give
                    such relief and aid as the exigencies of the case may require.
28   *Hicks v. Clayton*, 67 Cal. App. 3d 251, 264, 136 Cal. Rptr. 512, 520 (Cal. Ct. App. 1997)
        (quoting *Quist v. Empire Water Co.*, 204 Cal. 646, 653, 269 P. 533, 535 (1928),
        punctuation omitted).

investigating, and remedying" a defendant's violation of the law supports a finding of irreparable harm. *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007). The injunctive relief sought herein will help protect these efforts and ensure that Holmes's debts will be reported as disputed, and will continue to be reported as disputed even if the debts are transferred to another debt collector.

Damages are also not an adequate remedy when it is difficult to calculate their proper measure. Where "damages would be difficult to valuate[, they] thus constitute[] possible irreparable harm." *Rent-A-Center*, 944 F.2d at 603. *See also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991). California law is in accord. *See Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 418, 58 Cal. Rptr. 3d 527, 541 (Cal. Ct. App. 2007); Cal. Code Civ. Proc. § 526(a)(5) (2009) (difficulty in calculating damages is factor supporting preliminary injunction). Holmes has suffered concrete loss of credit by Bank of America and SallieMae through Defendants' misconduct, and the damages from that loss can be calculated. (Holmes Decl. ¶ 8.) However, Holmes has experienced immense personal frustration and loss of peace of mind in combating the inaccuracies and incomplete information in his credit report.[4] (*Id*. ¶ 9.) Where a plaintiff's "annoyance and disturbance . . . is very difficult to measure," equitable relief may be available because "it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief[.]" *Anderson*, 38 Cal.2d at 833-34, 243 P.2d at 502-03 (punctuation, citations omitted). *See also Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823, 842 (C.D. Cal. 1998) (granting preliminary injunction; invasion of privacy claim could recover damages for to plaintiff's "peace of mind," but such damages "are difficult to quantify, and such injuries are to some extent irreparable"). Federal courts have recognized that damages do not adequately remedy emotional distress arising from the

---

[4]   Holmes has a remedy for "actual damages" under the CCRAA. Cal. Civ. Code § 1785.31(a) (2009). When a California statute provides for the recovery of "actual damages," the phrase means "compensatory damages," and compensatory damages "include nonquantifiable general damages for emotional distress and pecuniarily measurable special damages for out-of-pocket losses." *Walnut Creek Manor v. Fair Employment & Housing Comm'n*, 54 Cal.3d 245, 255, 814 P.2d 704, 709 (1991). "[C]ompensatory damages for emotional distress . . . are not pecuniarily measurable, defy a fixed rule of quantification, and are awarded without proof of pecuniary loss." *Id*., 54 Cal.3d at 263, 814 P.2d at 714.

violation of a legal right. *See Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) (termination of employment causes "emotional damages and stress, which cannot be compensated by mere back payment of wages").[5]  Because Holmes's damages for the emotional distress caused by Defendant's conduct are necessarily difficult to calculate, they are not an adequate remedy and injunctive relief is appropriate.

Finally, damages are inadequate because they are not as effective or certain as the requested injunctive relief. Courts have recognized in many contexts that damages are not an adequate remedy if they merely serve to set a price for the defendant to usurp the plaintiff's control over a legally protected interest or right. For instance, injunctions are an appropriate remedy against a continuing trespass because this "prevent[s] a wrongdoer from gaining control of land merely by paying a penalty of damages." *Brown Derby Hollywood Corp. v. Hatton*, 61 Cal.2d 855, 858, 395 P.2d 896, 898 (1964). Intellectual property cases often follow this logic as well. Compulsory royalties are an inadequate alternative to injunctive relief against contributory copyright infringement, because it would deprive the plaintiffs of "the power to control their intellectual property." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1029 (9th Cir. 2001) (cited, followed by *MGM*, 518 F. Supp. 2d at 1217 (copyright infringement causes irreparable harm where "it has the actual effect of irreparably harming a plaintiff's right to control the use of his/her copyrighted material")).[6] Here, the CCRAA gives Holmes a right to an accurate and complete credit report. Damages are not an adequate remedy, as that term is defined in *Bluitt*, because they do not directly protect Holmes's rights

---

[5]  *See also Chalk v. United States Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 709 (9th Cir. 1988) (employment transfer which deprived plaintiff of "tremendous personal satisfaction and joy" derived from prior position caused emotional injury which could not "be adequately compensated for by a monetary award after trial"); *Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021, 1039-40 (N.D. Cal. 2000) (imminent park closure threatened plaintiffs seeking "continued access to recreation that improves the quality of their lives" with irreparable harm).

[6]  *See also Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 615, 616 (C.D. Cal. 1996) ("significant threat of irreparable harm" where continued trademark infringement would deprive the trademark owner of being "able to control its reputation"); *Jay Bharat Developers, Inc. v. Minidis*, 167 Cal. App. 4th 437, 447, 84 Cal. Rptr. 3d 267, 274 (Cal. Ct. App. 2008) (injunctive relief was appropriate where plaintiff established "that the interim harm it would suffer was more than monetary" by proving that defendant's conduct might cause a "lack of control over [plaintiff's] . . . mark").

by providing him the control he needs to ensure an accurate and complete credit report. At best, money damages protect Holmes's rights under the CCRAA indirectly, by deterring Defendants from future violations. The value of this deterrence is questionable. The threat of liability has not prompted Defendants to comply with the CCRAA or FDCPA so far: why should such Plaintiff expect them to be deterred now?

> **D.    Because the Proposed Injunction is Narrowly Drawn, the Balance of Harms and the Public Interest Favor Granting the Injunction**

The proposed injunction advances the public interest, and the irreparable harm to Holmes in the absence of the proposed injunction outweighs the hardship of complying with the proposed injunction to the Defendants. *See Save Our Sonoran*, 408 F.3d at 1120.

The proposed injunction is narrowly drafted to impose the lightest possible burden on Defendants while protecting the interests of Holmes. As shown above, the proposed injunction is needed to limit the injury to Holmes's reputation by restraining future violations of the CCRAA and FDCPA. In contrast, complying with the injunction will cause little harm to Defendants. Defendants already undertake the administrative burdens of reporting disputed debts to the CRAs – reporting that the debts are, in fact, disputed cannot impose significant additional administrative costs. Likewise, the marginal costs of disclosing that disputed debts are disputed does not add a significant burden to any sale or transfer of a disputed debt. *Cf. Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1191 (C.D. Cal. 2002) (balance of hardships supported injunction requiring defendant to police customers' websites for infringing content, where defendant was "not only in position to exercise its ability to control the content of the system [but] already [did so] when it suit[e]d its financial interests"). Moreover, courts do not need to recognize the costs of avoiding intentional violations of the law when balancing the hardships of a requested preliminary injunction. "[A] defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights." *eBay, Inc. v. Bidder's Edge*, 100 F.

Supp. 2d 1058, 1069 (N.D. Cal. 2000).[7]

The proposed injunction also serves the public interest. The benefit to other consumers disputing purported debts with Defendants is obvious; they are no longer exposed to Defendants' violations of the CCRAA or FDCPA. Moreover, the injunction will also benefit potential creditors who might otherwise rely on incomplete credit reports to offer Holmes and other persons protected by the injunction less than competitive rates. Finally, the injunction will benefit lawful competitors of Defendants by eliminating any competitive disadvantage arising because they incur the additional costs and burdens of complying with the law, while Defendants do not. The proposed injunction serves the public interest by leveling the competitive playing field between Defendants and competitors which comply with the CCRAA and FDCPA.

### E. The Court Should Require No Bond or a Minimal Bond

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any.*'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id. See also Justin v. City of Los Angeles*, No. 00-12352, 2000 WL 1808426, at *2 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Conversely, there is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran*, 408 F.3d at 1126. *See also Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for class representative). Holmes is a public servant, and

---

[7] To the extent Defendants demonstrate unforeseen burdens in complying with the proposed injunction, such equitable defenses do not serve to defeat Holmes's claim for injunctive relief, but only "guide the court's discretion in fashioning the equitable remedies . . ." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 179, 999 P.2d 706, 716 (2000).

1  cannot realistically afford more than a $1,000 bond. (Holmes Decl. ¶ 10.) Holmes's status as
2  class representative, his inability to absorb the expenses of large commercial enterprises like
3  the Defendants, the minimal costs of complying with the proposed injunction, and the public
4  interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all.
5  *Cf. Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to require only
6  nominal bond of $1,000); *Justin*, 2000 WL 1808426, , at *13 (where injunction on
7  constitutional claim "pose[d] no risk of pecuniary injury . . . from being restrained and
8  enjoined," class representative exempted from bond)).

**III.    Conclusion**

Holmes presents straightforward evidence that Defendants each violated the CCRAA
and the FDCPA. Holmes is entitled to injunctive relief on the basis of this evidence. The
proposed preliminary injunction adequately protects the interests of Holmes and similarly
situated persons, while minimizing the potential harm to Defendants' businesses. The
proposed injunction should be granted.

Dated: July 8, 2009

By:   s/Ethan Preston
Ethan Preston (263295)
PRESTON LAW OFFICES, LLC
1658 North Milwaukee Avenue, No. 253
(312) 492-4070 (phone)
(312) 262-1007 (facsimile)
ep@eplaw.us

David C. Parisi, Esq. (162248)
Suzanne Havens Beckman, Esq. (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

1 | Ethan Preston (263295)
PRESTON LAW OFFICES, LLC
2 | 1658 North Milwaukee Avenue, No. 253
(312) 492-4070 (phone)
3 | (312) 262-1007 (facsimile)
ep@eplaw.us
4 |
David C. Parisi, Esq. (162248)
5 | Suzanne Havens Beckman, Esq. (188814)
PARISI & HAVENS LLP
6 | 15233 Valleyheart Drive
Sherman Oaks, California 91403
7 | (818) 990-1299 (phone)
(818) 501-7852 (facsimile)
8 | dcparisi@parisihavens.com
shavens@parisihavens.com
9 |

10 | *Attorneys for Plaintiff Harold Holmes, on behalf
of himself, and all others similarly situated*

11 |

12 | **IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

13 |

14 | HAROLD HOLMES, an individual, on his
own behalf and on behalf of all others
similarly situated,

15 |

16 |                                Plaintiff,

17 |           v.

18 | COLLECTION BUREAU OF AMERICA,
LTD., a California corporation, and BAY
AREA CREDIT SERVICE, LLC, a California
19 | limited liability company,  and DOES 1-100,
inclusive,

20 |

21 |                                Defendants.

| No. C 09-2540 WHA |
| --- |
| Judge William H. Alsup |
| **[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION** |

**Date:**          **August 13, 2007**
**Time:**          **8:00 am**
**Location:**    **Courtroom 9, 19th Floor
                     450 Golden Gate Ave.
                     San Francisco, CA 94102**

22 |           Plaintiff's Motion for Preliminary Injunction came on for hearing before this Court,

23 | and all parties being represented by counsel, the Court having reviewed the Motion, and after

24 | consideration of all papers filed by the parties, and all other matters presented to the Court, the

25 | Court finds that it should grant the Motion. IT IS HEREBY ORDERED THAT

26 |           a)        Defendants Collection Bureau of America, Ltd. and Bay Area Credit
                          Services, LLC, their officers, agents, servants, employees, attorneys, or
                          other persons who are in active concert or participation with any of the
27 |                      foregoing are ENJOINED from:

28 |                      1.        reporting any purported debt which debt has been disputed, in
                                      writing, by the person who purportedly owes the debt ("Disputed

---

[Proposed] Order Granting Preliminary Injunction                                    No. C 09-2540 WHA

Debt") to a credit reporting agency (specifically including, but without limitation, TransUnion, Equifax, or Experian) unless Defendants also report the fact that such Disputed Debt has been disputed; or from

2.   selling, assigning, or transferring any Disputed Debt without disclosing to any person who receives any Disputed Debt or to any person who attempts to purchase any Disputed Debt that the Disputed Debt has been disputed.

b)   For each Disputed Debt that Defendants have reported to a credit reporting agency, but which Disputed Debts have not been reported to the credit reporting agency as disputed, Defendants are ORDERED to report the Disputed Debt as disputed in the Defendant's next reporting cycle and in any event no later than 60 days from the date of the Court's order, or to cause the debt not be to reported at all;

c)   Having carefully considered the equities of this case and the evidence presented to it, pursuant to Federal Rule of Civil Procedure 65(c), the Court sets the bond for this injunction at $0.

Dated:

_____
Hon. William H. Alsup
United States District Judge

1

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion for Preliminary Injunction and

accompanying supporting documents was this date served upon the parties below Fed. R. Civ.

P. 5(b) by causing a copy of the same to be placed in the United States Mail, postage prepaid,

and sent to their last known address as follows:

> Bay Area Credit Service, LLC
> 1901 West 10th Street
> Antioch, California 94509

Service was made upon Collection Bureau of America, Ltd. pursuant to the Northern District

of California's General Order No. 45 on electronic case filing. Pursuant to 28 U.S.C.§ 1746, I

declare under penalty of perjury that the foregoing is true and correct.


Dated: July 8, 2009

> By:  s/Ethan Preston
> Ethan Preston (263295)
> PRESTON LAW OFFICES, LLC
> 1658 North Milwaukee Avenue, No. 253
> (312) 492-4070 (phone)
> (312) 262-1007 (facsimile)
> ep@eplaw.us

Certificate of Service                                                                                     No. C 09-2540 WHA