United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD HOLMES, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>COLLECTION BUREAU OF AMERICA, LTD., a California corporation, and BAY AREA CREDIT SERVICE, LLC, a California limited liability company, and DOES 1–100, inclusive<br><br>  Defendants.<br>_____ / | No. C 09-02540 WHA<br><br>**ORDER DENYING DEFENDANTS' MOTION RE COMMUNICATION WITH PUTATIVE CLASS MEMBERS AND GRANTING MOTION RE JOINT-DEFENSE PRIVILEGE** |

**INTRODUCTION**

In this purported class action regarding debt collection, defendants have filed motions for protective orders to (1) limit plaintiff's ability to communicate with potential class members and (2) restrict discovery of communications between defendants on the basis of a "joint-defense privilege." For the following reasons, the motion regarding communications with potential class members is **DENIED** and the motion regarding a joint defense is **GRANTED**.

**STATEMENT**

Plaintiff Harold Holmes is an individual who disputed several AT&T bills for telephone service. Defendants Collection Bureau of America ("CBA") and Bay Area Credit Service, LLC ("BAC") are collections agencies. AT&T assigned defendant CBA to collect the debts on two of plaintiff's accounts and defendant BAC to collect on a third account. Plaintiff contends that defendants violated state and federal law by reporting the debts in question as undisputed to the

three credit reporting agencies after he had disputed the debts in correspondence sent to defendants.

A hearing was held on numerous discovery disputes between plaintiff and defendants on December 11, 2009. The parties subsequently submitted a joint discovery protocol which was approved by an order dated December 21, 2009, setting a briefing schedule on the present motions (Dkt. No. 67). The deadline for plaintiff to file a motion for class certification is March 4, 2010.

## ANALYSIS

### 1. COMMUNICATION WITH PUTATIVE CLASS MEMBERS.

Defendants seek an order pursuant to which any proposed communication by named plaintiff or his counsel with putative class members would be first submitted to defendants for review and opportunity to comment. Under defendants' plan, if the parties could not agree within five days regarding the content of the proposed communication, the issue would be presented to the undersigned for resolution.

The Supreme Court has held that a federal district court exceeds its authority where it limits communications from named plaintiffs and their counsel to prospective class members during the pendency of a suit where the record reveals no grounds on which the district court can determine that it is necessary or appropriate to impose such an order. *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). Such an order involves serious restraints on expression and interferes with the class representative's efforts to inform potential class members of the existence of the suit and makes it more difficult for the representative to obtain information about the merits of the matter from the persons they seek to represent. An order limiting communication between parties and potential class members must be based on a clear record and specific findings that reflect the weighing of the need for limitation and the potential interference with the rights of the parties. Such a weighing identifying the potential abuses being addressed must result in a carefully-drawn order that limits speech as little as possible, consistent with rights of the parties under the circumstances. In *Gulf Oil,* the Supreme Court reversed an order that had required the district court's prior approval of communications

1  between parties or their counsel and any actual or potential class members in the absence of
2  such a clear record and specific findings.

3  Defendants do not clearly identify why limiting communications with potential class
4  members is necessary in this matter. They do not allege that any contact has occurred to date
5  between plaintiff or his counsel and potential class members. Plaintiff's counsel in fact states in
6  his opposition to defendants' motion that he does not foresee contacting class members prior to
7  class notice (Opp at 5). Defendants argue merely that it would be improper for plaintiff to
8  conduct discovery for the purpose of finding a new class representative prior to class
9  certification but do not cite any authority to that effect. Nor is this somewhat hypothetical (in
10 light of plaintiff's counsel's statement that he does not foresee contacting potential class
11 members) argument sufficient to support specific findings that prior approval of
12 communications is warranted. Defendants' motion to limit communications with potential class
13 members is therefore **DENIED**.

14  **2.  JOINT-DEFENSE PRIVILEGE.**

15  Plaintiff's requests for production served on October 8, 2009, sought all
16 communications between defendants concerning plaintiff and all communications between
17 defendants concerning this proceeding. Defendants claim that they have sufficiently set forth
18 the existence of a "joint-defense privilege" to protect their joint communications after the
19 initiation of the present suit and the establishment of a joint-defense agreement between them.
20 Defendants have submitted as an attachment to a sworn declaration by defendant CBA's
21 counsel Albert Finch an email between Attorney Finch and Taylor Pensoneau, general counsel
22 for BACS, in which they agreed to present a joint defense on July 15, 2009 (Finch Decl. Exh.
23 A). They have submitted a privilege log listing sixty-six communications between counsel for
24 defendants which they assert are privileged pursuant to a joint-defense agreement (Watkins
25 Decl. Exh. A).

26  The "joint-defense" or "common-interest" privilege is an extension of the attorney-client
27 privilege and work-product doctrine designed to facilitate communication among joint parties
28 regarding matters that are important to protect their interests in litigation. The concept of a joint

3

defense is not technically a privilege in and of itself but instead constitutes an exception to the rule on waiver where communications are disclosed to third parties. *See Continental Oil Co v. United States*, 330 F.2d 347, 350 (9th Cir. 1964) (recognizing a joint-defense privilege over communications made among potential codefendants and their counsel). The concept applies where parties are represented by separate counsel but engage in a common legal enterprise. The interests of the parties involved in a common defense need not be identical, and, indeed may even be adverse in some respects. *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) (finding that the joint-defense exception applied to statements concerning a matter of common concern, even though co-defendants generally had a significant conflict of interest). The joint-defense exception, however, protects *only* those communications that are part of an on-going and joint effort to set up a common defense strategy. The burden of establishing that the attorney-client privilege — and by extension the joint-defense exception— applies is on the party asserting the privilege. *See Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

  Plaintiff contends that the joint-defense exception does not apply to the present matter because defendants allegedly do not share an identical legal interest. Defendants were assigned to collect on different accounts that plaintiff had with AT&T and were allegedly notified separately by plaintiff that his debts were disputed. Plaintiff relies on a series of opinions that have held that the key consideration in determining if parties have a common interest giving rise to a joint-defense exception is whether the nature of their legal interest is *identical*, not similar, and *legal*, not solely commercial." *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974).

  Although the factual allegations asserted by named plaintiff against each defendant are slightly different, the legal claims against them are virtually identical. Plaintiff's complaint asserts that both defendants attempted to collect $305 in principal from him on a debt he owed to AT&T and that defendants reported the debt as undisputed to credit reporting agencies, causing plaintiff's injury (Compl. ¶¶ 17–18, 21, 25). The same three claims are asserted against both defendants; in particular, both are accused of violating (in the same way) the Fair Debt

4

1 Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, California's
2 Consumer Reporting Agency Act and California's Unfair Competition Law. Defendants share
3 virtually identical legal interests and legal defenses against these identical assertions.[1]

4     The opinions cited by plaintiff are inapposite because they involve either assertions of a
5 common commercial (not legal) interest, communications between defendants and non-parties,
6 communications between defendants' employees but not counsel, or situations where
7 defendants did not share the same legal interests.[2] In *Carl Zeiss Vision Int'l GmbH v. Signet*
8 *Armorlite Inc.,* 2009 U.S. Dist. LEXIS 111877 (S.D. Cal. 2009), the communications at issue
9 were between non-party employees and the defendants did not share a common legal interest.
10 In *Key v. U.S. Bancorp Disability Income Plan*, 1988 U.S. Dist. LEXIS 11954 (D. Or. 1988),
11 the attorney-client privilege was waived for information disclosed by defendant to a third-party
12 employee who was not a defendant in the action. In *Duplan Corp. v. Deering Milliken, Inc.* 397
13 F.Supp. 1146, 1172 (D.S.C. 1974), the court held that the mere interest of a non-party client in
14 legal transactions between the prime client and an outsider was not sufficient to prevent a
15 waiver of the attorney-client privilege, no matter how commercially strong was the non-party
16 client's commercial interest. Similarly, in *Durkin v. Shields (In re Imperial Corp. Of Am.)*, 167
17 F.R.D. 447 (S.D. Cal. 1995), the communications at issue were commercial, not legal, in nature.

18     Plaintiff finally argues that even if defendants share a common legal interest that they
19 have failed to demonstrate that their communications at issue were part of a joint defense effort.
20 But as noted above, no written agreement is generally required to invoke the joint-defense
21 exception. *See United States v. Weissman,* 195 F.3d 96, 98-99 (2d Cir.1999) (finding no joint
22 defense agreement in place at the time communication took place). Counsel for both defendants

---

[1] Plaintiff moves to strike defendants' arguments that they have an identical legal defense pursuant to the CCRA and that defendants' communications are covered by the work-product doctrine on the grounds that they were not explicitly alleged in their opening brief. Defendants' argument regarding the CCRA in reply was clearly addressed to plaintiff's assertion in his opposition that in order for the joint-defense exception to apply the defenses in question needed to be identical, not merely similar. Defendants' argument regarding the work-product doctrine was implicitly asserted in their opening motion and in the discovery dispute heard on December 7 which preceded the motion. Plaintiff's motion to strike is therefore **DENIED**.

[2] Indeed, it is notable that plaintiff's argument that the claims and defenses against each defendant hinge on unique, unrelated facts would tend to militate against a finding of commonality necessary for class certification.

5

submitted sworn declarations that they agreed to pursue a joint defense strategy in July 2009 and to communicate with each other regarding their shared legal interests (Kaminski Decl. ¶ 8–9, Finch Decl. 8–11). An email between defendants memorialized this agreement on July 15, 2009. This is sufficient to demonstrate that the existence of a joint defense effort in this matter.

For the foregoing reasons, defendants' motion for an order finding that the joint-defense exception applies to their lawyers' communications regarding their shared legal interests on and after July 15, 2009, is **GRANTED**.

**CONCLUSION**

Defendants' motions for protective order are **GRANTED** as to a finding that the joint defense privilege applies and **DENIED** as to limiting communications with putative class members. Defendants have submitted a privilege log describing the communications they are withholding pursuant to their assertion that the joint-defense exception applies. If plaintiff wishes to challenge the designation of any particular entry or entries on the privilege log, he must so move — stating specifically why the entry is deficient — on or before **NOON ON JANUARY 21, 2010.** Oppositions will be due by noon on **JANUARY 28, 2010.** Reply briefs will not be filed. A hearing will be scheduled on any such disputes on **FEBRUARY 4, 2010, AT 8:00 A.M.**

**IT IS SO ORDERED.**

Dated: January 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6